Sealed
Public and unofficial staff access to this instrument are prohibited by court order

United States Courts
Southern District of Texas
FILED

February 05, 2026

Nathan Ochsner, Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § <br> § <br> v. § <br> § <br> MITCHELL OCIE KILLION, § <br> § <br> § <br> Defendant. § | CRIMINAL NO. 26-cr- <br><br> **4:26-cr-58** <br><br> UNDER SEAL |

## INFORMATION

**THE UNITED STATES ATTORNEY CHARGES:**

### GENERAL ALLEGATIONS

At all times relevant to this Information:

1. From in or about March 2023 through in or about October 2023, **MITCHELL OCIE KILLION** co-owned and operated the Greater Texas Gaming Coalition, Inc., a Texas Domestic For-Profit Corporation incorporated on or about March 21, 2023 using **KILLION**'s home address in Edinburg, Texas.

2. The nominal purpose of the Greater Texas Gaming Coalition was to lobby local municipalities to pass pro-gambling ordinances, and once authorized by local municipalities to filter prospective licensees on behalf of the local municiplities. In furtherance of this nominal purpose, KILLION consulted with **Co-Conspirator One**, a licensed attorney with State Bar of Texas who conducts legal practice in Edinburg, Texas.

3. KILLION, as the owner and operator of the Greater Texas Gaming Coalition, participated in an illegal gambling network. KILLION required individual game room operators to purchase a "membership" in the Greater Texas Gaming Coalition as a prerequisite for obtaining

1

a gaming permit from specific municipalities. The initial new member "membership" fee was $15,000 per individual game room, followed by monthly payments of $5,000 to the Greater Texas Gaming Coalition. These "memberships" created a closed network, in which municipalities authorized only Greater Texas Gaming Coalition members to operate "maquinitas" or 8-liner slot machines within their municipalities..

4. The Greater Texas Gaming Coalition member's illegal gaming rooms, along with the Lucky Hive, all utilized the same payout scheme. This scheme was designed to appear to comply with the relevant Texas laws described below, including the "Fuzzy Animal Exception," under which game room operators were allowed to award noncash prizes worth no more than $5. Specifically, Greater Texas Gaming Coalition members awarded novelty silver pellets as "winnings" from the "8-liner" gambling machines. Winners then took the pellets to "silver exchange boutiques" located on the same property as the game rooms. The sole purpose of these boutiques was to allow gambling room winners to exchange each novelty pellet for $5 cash. The boutiques then sold the novelty pellets back to the game room at a predetermined price.

5. During this period, these game rooms were cash-heavy operations, and they employed a variety of individuals to operate them, including managers, money couriers, security personnel, and others.

6. The Lucky Hive was an illegal game room located in Edcouch, Texas. It was a member of the Greater Texas Gambling Coalition and operated under the authority and guidance of **KILLION** and others. The illegal game room featured electronic gambling machines known as "maquinitas" or "8-liners," which were configured to function as slot machines, offering patrons the opportunity to gamble for cash prizes in excess of $5 per play.

## TEXAS STATE LAW GOVERNING GAME ROOM REGULATIONS

7.  Chapter 47 of the Texas Penal Code regulated the operation of game rooms in the State of Texas. Specifically, it included the following:

    - Texas Penal Code § 47.01(3) prohibited the operation of a "gambling place," which was defined as "any real estate, building, room, tent, vehicle, boat, or other property whatsoever, one of the uses of which is the making or settling of bets, bookmaking, or the conducting of a lotter or the playing of gambling devices";

    - Texas Penal Code § 47.01(4) defined a "gambling device" as "any electronic, electromechanical, or mechanical contrivance not excluded under Paragraph (B) that for a consideration affords the player an opportunity to obtain anything of value, the award of which is determined solely or partially by chance, even though accompanied by some skill, whether or not the price is automatically paid by the contrivance"; and

    - Texas Penal Code § 47.01(4)(B), in what was commonly known as the Fuzzy Animal Exception, excluded from the definition of gambling device "any electronic, electromechanical, or mechanical contrivance designed, made, and adapted solely for bona fide amusement purposes if the contrivance rewards the player exclusively with noncash merchandise prizes, toys, or novelties, or a representation of value redeemable for those items, that have a wholesale value available from a single play of the game or device of not more than 10 times the amount charged to play the game or device once or $5, whichever is less."

8.  Chapter 234 of the Texas Local Government Code regulated game rooms in all

3

counties in Texas, including Hidalgo County, Texas. In particular, the regulations permit counties to prohibit certain conduct including, but not limited to, operating a game room without a permit, failing to display a game room permit, exceeding the hours of operation, failing to keep certain employment and tax records, and issuing or requiring a game room membership. A violation of these sections of the Texas Local Government Code is a criminal offense.

9. At all periods relevant to this Information, the gambling businesses overseen by **KILLION** and his co-conspirators involved five or more individuals who conducted, financed, managed, supervised, directed, or owned all or part of their gambling business.

10. At all periods relevant to this Information, the premises referenced in this Indictment had been or remained in continuous operation for a period exceeding 30 days or had gross revenues of more than $2,000 on a single day.

11. At all periods relevant to this Information, the game rooms referenced in this Information had been operating in violation of various laws of the State of Texas, where said illegal gambling business was conducted.

## COUNT ONE
(Conspiracy)

12. The allegations in Paragraphs 1 through 11, of this Information are incorporated and re-alleged as if fully set forth herein.

13. From in or about March 2023, through in or about October 2023, in the Southern District of Texas, and elsewhere within the jurisdiction of the Court, defendant

**MITCHELL OCIE KILLION,**

together with **Co-Conspirator One** and other individuals, known and unknown to the Grand Jury, did knowingly combine, conspire, confederate, and agree with each other to:

a. knowingly conduct, finance, manage, supervise, and direct an illegal

4

gambling business in violation of the laws of the State of Texas, which involved five or more persons who conducted, financed, managed, supervised, and directed such business and such business remained in substantially continuous operation for a period in excess of thirty days, and had a gross revenue in excess of $2,000 in any single day, in violation of 18 U.S.C. § 1955; and

  b. knowingly use, and cause to be used a facility in interstate and foreign commerce, namely a telephone, and a wire and electronic communication, (i) with the intent to distribute the proceeds of, and (ii) with the intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of an unlawful activity, namely intentionally:

- conducting, financing, managing, supervising, directing, and owning all or part of an illegal gambling business involving the operation of electronic gambling devices, in violation of the laws of the State of Texas, and
- intentionally conducting or attempting to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity in violation of Title 18, United States Code, Sections 1956 and 1957, and

thereafter performed, and attempted to perform, an act to promote, manage, establish and carry on, and to facilitate the promotion, management, establishment, and carrying on of the above unlawful activity, in violation of Title 18, United States Code, Section 1952(a)(1) and (3).

## PURPOSE

15. It was a purpose of the conspiracy for the defendant to conduct, finance, manage, supervise, direct, and own an illegal gambling business via the Greater Texas Gaming Coalition,

5

Inc., as well as the series of game rooms operating in and around Edcouch and Elsa Texas.

16. It was further a purpose of the conspiracy for defendants to transport silver and cash proceeds between game room locations and silver exchanges boutiques, as well as to banks and other locations in Hidalgo County, Texas, for the purpose of laundering such cash proceeds.

17. It was further a purpose of the conspiracy for defendants to communicate via telephone, wire, and electronic messages regarding their illegal enterprise.

## *MANNER AND MEANS*

18. The conspiracy used the following manner and means, among others:

19. **KILLION**, and others known and unknown to the Grand Jury, coordinated their gambling business and money laundering using cellular phones and in-person meetings. **KILLION**, along with other co-conspirators, concealed the scheme by, among other things, encouraging payments by way of "campaign contributions" to public officials, in person, rather than via telephone. **KILLON** coordinated meetings, using cellular phones, with other co-conspirators, to obtain "licenses" and permission from county officials to operate the illegal gaming rooms in certain areas and promised Greater Texas Gaming Coalition members protection from law enforcement operations.

## *OVERT ACTS*

20. In furtherance of the conspiracy, and to accomplish its goal, the defendant and others, both known and unknown to the Grand Jury, committed and caused to be committed, the following overt acts, among others, in the Southern District of Texas and elsewhere within the jurisdiction of the Court:

   a. On or about March 22, 2023, Co-Conspirator One, assisted **KILLION** in establishing a bank account for the Greater Texas Gaming Coalition by using **Co-Conspirator One's** business office address.

6

    b. In or about April 2023, **KILLION** partnered with **Co-Conspirator One** and agreed to share of approximately 30% to 35% of the Coalition's profits with **Co-Conspirator One.**

    c. Between April 2023 and June 2023, KILLION met with multiple perspective game room owners and operators, conveying that they needed to join the Greater Texas Gaming Coalition to receive necessary permits from the municipalities in Edcouch and Elsa, Texas.

    d. On or about June 6, 2023, **Co-Conspirator One** represented the Greater Texas Gaming Coalition at a City Council meeting in Donna, Texas, and requested that City Council expand and allow licensing permits for a fee of $50,000 per gaming room per application.

    e. On or about June 7, 2023, **KILLION** wrote a check from the Greater Texas Gaming Coalition's bank account to **Co-Conspirator One** in the amount of $15,750.

    f. On or about July 31, 2023, **KILLION** wrote a check from the Greater Texas Gaming Coalition's bank account to **Co-Conspirator One** in the amount of $19,250.

    g. On or about August 22, 2023, The Lucky Hive commenced operations in Edcouch, Texas.

    h. On or about September 22, 2023, a patron at The Lucky Hive hit a Jackpot of $1,460 and ultimately received a payout of $807, first provided in silver and then exchanged the silver for U.S. Currency.

    i. On or about September 27, 2023, a patron at The Lucky Hive hit a Jackpot of $10,206 and received a payout of $10,039, first provided in silver and then exchanged the silver for U.S. Currency.

21. All in violation of Title 18, United States Code, Sections 371 and 1955.

## NOTICE OF CRIMINAL FORFEITURE
[18 U.S.C. § 981(a)(1)(C); 28 U.S.C. § 2461(c)]

22. The allegations contained in Paragraphs 1 through 22 of this Information are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 981(a)(1)(C).

23. Pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), as a result of the commission of a violation of Title 18, United States Code, Section 371, as alleged in Count One of this Indictment, notice is given to the defendant,

## MITCHELL OCIE KILLION,

that the defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of Section 371.

## MONEY JUDGEMENT

24. The United States gives further notice to the Defendants that the United States seeks a personal money judgment payable to the United States of America in an amount equal to the total value of the property subject to forfeiture for which the defendants may be liable upon conviction.

## SUBSTITUTE ASSETS

25. If any of the property described above, as a result of any act or omission of the defendant[s]:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

**NICHOLAS J. GANJEI**
**UNITED STATES ATTORNEY**

_____
CAROLYN FERKO
ASSISTANT UNITED STATES ATTORNEY


_//S// Robert Guerra_____
ROBERT GUERRA
ASSISTANT UNITED STATES ATTORNEY


_//S// Roberto Lopez_____
ROBERTO LOPEZ
ASSISTANT UNITED STATES ATTORNEY